IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

KWOK WAI YU,                             )
                                         )
              Plaintiff,                 )    TC-MD 120146N
                                         )
       v.                                )
                                         )
MULTNOMAH COUNTY ASSESSOR,               )
                                         )
              Defendant.                 )    **DECISION**

Plaintiff appeals the real market value of property identified as Account R579213

(subject property) for the 2011-12 tax year.  A telephone trial was held on July 18, 2012.

Plaintiff appeared and testified on his own behalf, through a court-provided interpreter.  Barry

Dayton, registered appraiser, appeared and testified on behalf of Defendant.  Plaintiff's Exhibit 1

(Multnomah County Board of Property Tax Appeals real property petition) was received without

objection.  Defendant's Exhibits A and B were received without objection.

## I.  STATEMENT OF FACTS

The subject property is a 1,492-square-foot " '[t]ownhouse' style two level building"

situated on a "standard size" 1,911-square-foot lot with a "patio" and a "fence."  (Def's Ex A at

4, 9.)  The subject property improvement was constructed in 2008; Defendant described the

construction quality as "average to low-average" and the condition as "good."  (*Id*.)

Plaintiff relied on five comparable sales which sold for prices ranging from $115,000 to

$142,000; the sales occurred between December 2010 and September 2011.  (Ptf's Ex 1 at 3-4.)

According to the information provided by Plaintiff, each of his comparable sales was built

between 2004 and 2009.  (*Id.*)  Plaintiff's comparable sales range in improvement size from

1,340 to 1,532 square feet.  (*Id.*)

Dayton testified that he reviewed the information provided by Plaintiff concerning his comparable sales; he looked up each of Plaintiff's comparable sales on the regional multiple listing service; and he read the recorded deed for each of Plaintiff's comparable sales. (*See* Def's Ex B (including deeds for Plaintiff's comparable sales).) Dayton testified that all five of Plaintiff's comparable sales are condominium units. (*See id.*) He testified that condominium units are not comparable to the subject property because the subject property is an attached townhouse and includes land; by contrast, sales of condominium units do not include land. Dayton testified that Plaintiff's sale 1 was facilitated by a non-profit organization that provided a $35,000 subsidy to the buyer. (*See id.* at 9.) He testified that Plaintiff's sales 2 and 4 were both short sales. Dayton testified that the seller of Plaintiff's sale 3 was related to the buyer; thus, the transaction may not have been arm's-length.

Dayton testified that he relied on the sales comparison approach, on which he determined a real market value of $210,000 for the subject property. (Def's Ex A at 7-8.) He testified that he selected three comparable sales of townhouse properties of a similar type as the subject property and located in close proximity to the subject property. (*See id.* at 9, 11.) Dayton's three comparable sales occurred in November 2010, June 2010, and February 2011, respectively. (*Id.* at 9 (date that escrow closed).) He adjusted for time, quality, size (above-grade square feet), and "HEAT/FUEL/AC," and he determined adjusted prices ranging from $207,920 to $218,620. (*Id.*)

Plaintiff criticized Dayton's comparable sales because none occurred in January 2011. Plaintiff testified that he was told that only sales from January 2011 would be considered and it is "unfair" that Defendant relied on sales that did not occur in January 2011. The court noted that, as discussed during the case management conference on May 15, 2012, the assessment date

for the 2011-12 tax year was January 1, 2011, and sales closer to that date are typically given more weight. Dayton testified that market data is not perfect, so he must select the best comparables available that are close to the January 1, 2011, assessment date.

Plaintiff criticized Dayton's comparable sale 1, testifying that it is one of four townhouse units and that it is the "most expensive" of the four. He testified that the other three townhouse units all sold for about $170,000. Dayton testified that he did not have any information readily available about the other three units and could not testify about those properties. Plaintiff testified that he has viewed the interior of Dayton's comparable sale 1 and it is very nice with "fancy" decorations; the interior finish is overall superior to the subject property. He testified that Dayton's comparable sale 3 is also nicer and larger than the subject property.

The 2011-12 roll real market value of the subject property is $196,950. (Ptf's Compl at 2.) The 2011-12 maximum assessed value of the subject property is $150,380. (*Id.*) Plaintiff requests that the 2011-12 real market value of the subject property be reduced to $142,000. Defendant requests that the 2011-12 roll real market value be sustained

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2011-12 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."[1]

_____

[1] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009.

The assessment date for the 2011-12 tax year was January 1, 2011. ORS 308.007; ORS 308.210.

"Real market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue * * *." ORS 308.205(2). There are three methods of valuation that are used to determine real market value: (1) the cost approach, (2) the sales comparison approach, and (3) the income approach. *Allen v. Dept of Rev.*, 17 OTR 248, 252 (2003). All three approaches must be considered, although all three approaches may not be applicable to the valuation of the subject property. OAR 150-308.205-(A)(2)(a). Both parties relied on the sales comparison approach. OAR 150-308.205-(A)(2)(c) states, in pertinent part:

> "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions."

"The court looks for arm's length sale transactions of property similar in size, quality, age and location * * * in order to determine the real market value" of the subject property. *Richardson*, TC-MD No 020869D, WL 21263620 at *3.

Plaintiff has the burden of proof and must establish his case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev. (Poddar),* 18 OTR 324, 332 (2005) (citing *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002)). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has

jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Plaintiff relied on five sales of condominium units in support of his requested reduction in the 2011-12 real market value of the subject property. Dayton testified that condominium units are not comparable to the subject property because condominium units do not include land, whereas the subject property includes both land and improvements. The court agrees with Dayton that Plaintiff's five sales are not comparable to the subject property. Plaintiff did not adjust any of his sales to be comparable to the subject property. Plaintiff has not established that the 2011-12 real market value of the subject property is in error.

Dayton testified and presented evidence in support of the 2011-12 real market value of the subject property. Plaintiff criticized Dayton's comparable sales, testifying that they are not comparable to the subject property with respect to size, quality, and time of sale. As the court stated in *Poddar*, "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." 18 OTR at 59. Plaintiff did not present competent evidence supporting his requested reduction in real market value.

### III. CONCLUSION

After carefully considering the testimony and evidence presented, the court finds that Plaintiff did not establish by a preponderance of the evidence that the 2011-12 roll real market value of the subject property is in error. Defendant presented persuasive evidence supporting the 2011-12 roll real market value of the subject property. Now, therefore,

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ⎯⎯ day of September 2012.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Magistrate Allison R. Boomer on September 12, 2012.  The Court filed and entered this Decision on September 12, 2012.*